DAVID HANKIN, Cal. Bar No. 319825
dhankin@ftc.gov
JEFFREY TANG, Cal. Bar No. 308007
jtang@ftc.gov
MILES D. FREEMAN, Cal. Bar No. 299302
mfreeman@ftc.gov
JOHN JACOBS, Cal. Bar No. 134154
jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*

F I L E D
CLERK, U.S. DISTRICT COURT

05/26/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ACCOUNTING BUSINESS CONSULTANTS, INC., a California corporation, also d/b/a NATIONAL AMENDMENT ASSISTANCE, NATIONWIDE ADVOCACY ADJUSTMENT, UNITED ADVOCACY COUNSELING, N.A.A., NATIONAL ACCOUNTING ASSISTANCE, U.A.C., NATIONWIDE INTAKE, and AMERICAN COMPLIANCE;<br><br>ACCOUNTING BUSINESS CONSULTANTS, INC., a Nevada corporation, also d/b/a NATIONAL | Case No. 8:26-cv-01297-JVS-(PDx)<br><br>COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF |

ADVOCACY ADJUSTMENT,
NATIONWIDE ADVOCACY
ADJUSTMENT, N.A.A., and U.A.C.;

ACCOUNTING SERVICE
PROVIDERS, INC., a California
corporation, also d/b/a NATIONAL
AMENDMENT ASSISTANCE,
PROCESSING SERVICE
PROVIDERS, N.A.A., A.L.A.,
ACCOUNTING ADMINISTRATION
SERVICES, U.A.C., and AMERICAN
AFFORDABILITY SERVICES;

AMSTER BEENE PARTNERS, INC.,
a California corporation, also d/b/a
ENTITLEMENT PROCESSING
SERVICES EPS, EPS-AALS,
AMERICAN COMPLIANCE,
AMERICAN ELIGIBILITY
SERVICES, and AMERICAN
ENTITLEMENT ASSISTANCE;

ASSERTIVE LOAN ADVISORS,
INC., a California corporation, also
d/b/a UNIVERSAL LEGAL
ADVOCACY, ALLIED SERVICES,
ASSERTIVE SERVICES, A.L.A., and
U.L.A.;

INDEPENDENT ACCOUNTING
CONSULTING, INC., a California
corporation, also d/b/a
NATIONWIDE ADVOCACY
ADJUSTMENT, N.A.A.;

UNITED ADMINISTRATION
COUNSELING, INC., a California
corporation, also d/b/a UNITED

ADVOCACY COUNSELING, U.A.C., and UNITED INTAKE;

UNITED BOOKKEEPING SERVICES, INC., a California corporation, also d/b/a ALLIED LEGAL ASSISTANCE, ALLIED LOAN ADMINISTRATION, A.L.A., N.A.A., P.P.D.S., U.A.C., and ALLIED CONSUMER ASSISTANCE;

MARINUS PIETER VAN ZWEEDEN, a/k/a MARCEL VAN ZWEEDEN, MARINUS VANZWEEDEN, MARCEL VANZWEEDEN, MARINUS VAN SWEEDEN, MARSHALL ZELLER, and MICHAEL ZIMMER, individually and as an officer of Accounting Business Consultants, Inc. (NV), Accounting Service Providers, Inc., and Amster Beene Partners, Inc.;

MARTIN HOWARD RUB, a/k/a MARTIN RUBEN, individually and as an officer of Accounting Business Consultants, Inc. (CA) and Independent Accounting Consulting, Inc.; and

SUSAN JANE BUSTAMANTE a/k/a SUE BUSTAMANTE, SUSAN BUSTAMANTES, and SUSAS BUSTAMANTE, individually and as an officer of Assertive Loan Advisors, Inc., United Administration Counseling, Inc., and United Bookkeeping Services, Inc.,

Defendants.

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1.     The FTC brings this action for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Mortgage Assistance Relief Services Rule ("MARS Rule") (Regulation O), 12 C.F.R. Part 1015, and Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821.  For these violations, the FTC seeks relief, including a temporary, preliminary, and permanent injunction, monetary relief, an asset freeze, the appointment of a receiver, immediate access to Defendants' business premises, and other relief, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57(b), MARS Rule, and GLB Act.

## SUMMARY OF THE CASE

2.     Defendants have operated a sophisticated mortgage assistance relief scam since at least 2022.  Through mass mailers, websites, emails, and phone calls, Defendants falsely promise homeowners mortgage rate and payment reductions under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  In violation of the MARS Rule, Defendants charge upfront fees before providing any mortgage relief services.  The average amount of these unlawful advance fees is approximately $2,000, which is frequently more than a consumer's monthly mortgage payment.  Defendants also advise consumers not to pay their mortgage for one to three months because they are entitled to a "grace period"—which is false.

3.     In exchange for upfront fees—but before providing any services—Defendants provide consumers with a "Loan Restructuring Package" for consumers to mail to their lender.  To compile the package, Defendants require consumers to send them sensitive financial information, including bank statements, pay stubs, and tax filings.  Defendants falsely claim that after receiving the

-1-

package, lenders are required under the CARES Act to lower the consumer's mortgage payments. However, the Loan Restructuring Packages do not impose any legal obligation on lenders, and lenders seemingly uniformly reject them and refuse to lower consumers' mortgage payments or rates. In at least one instance, a lender actually raised a consumer's rate instead of lowering it. The packages are nothing more than a stack of standard forms *requesting* a loan modification, along with some of the consumer's financial documents—all of which consumers could have prepared for free on their own.

4. When consumers reach out to Defendants about their lenders' refusal to lower their mortgage rates or payments, Defendants either stop responding to the consumer immediately or place the blame on the consumer's lender and gradually become unresponsive.

5. Defendants' practices cause disastrous outcomes: consumers pay thousands of dollars to Defendants, get nothing in return, often fall behind on their mortgage payments, and incur substantial late fees and interest. Consumers' mortgage interest rates consequently remain the same or higher than they had been before paying for Defendants' purported services, and multiple consumers have come close to foreclosure. Further, consumers' sensitive financial information is in the hands of Defendants who have been perpetrating a mortgage scam for years.

6. Defendants have taken in millions of dollars from consumers through their scheme.

7. This is not the first time Defendant Marinus Pieter Van Zweeden has allegedly orchestrated a deceptive mortgage relief scheme. Between 2013 and 2015, three different states investigated and sued Van Zweeden for falsely promising to secure loan modifications and collecting unlawful upfront fees and subsequently barred him from providing these unlawful services.

8. Accordingly, the FTC brings this action to stop Defendants' unlawful

-2-

conduct and seek relief for the consumers affected by Defendants' illegal business practices.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

11.     The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  Also, pursuant to 12 U.S.C. § 5538, the FTC enforces the MARS Rule, which requires mortgage assistance relief services providers to make certain disclosures, prohibits certain representations, and generally prohibits the collection of an advance fee.  The FTC also enforces the GLB Act, 15 U.S.C. §§ 6821-6827, which prohibits any person from obtaining or attempting to obtain customer information of a financial institution relating to another person by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

## DEFENDANTS

12.     Corporate Defendant Accounting Business Consultants, Inc. ("ABC CA"), also doing business as National Amendment Assistance, Nationwide Advocacy Adjustment, United Advocacy Counseling, N.A.A., National Accounting Assistance, U.A.C., Nationwide Intake, and American Compliance, is a California corporation formed in February 2023.  Its corporate filings list its principal place of business at 2 Enterprise, Suite #6206, Aliso Viejo, California

92656.  ABC CA transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, ABC CA has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

13.    Corporate Defendant Accounting Business Consultants, Inc. ("ABC NV"), also doing business as National Advocacy Adjustment, Nationwide Advocacy Adjustment, N.A.A., and U.A.C., was a Nevada corporation formed in February 2024.  Its corporate filings list its principal place of business at 3395 S. Jones Blvd., Ste. 103, Las Vegas, NV, 89146.  ABC NV transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, ABC NV has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

14.    Corporate Defendant Accounting Service Providers, Inc. ("Accounting Service Providers"), also doing business as National Amendment Assistance, Processing Service Providers, N.A.A., A.L.A., Accounting Administration Services, U.A.C., and American Affordability Services, is a California corporation formed in September 2022.  Its corporate filings list its principal place of business at 552 E. Carson Street, Carson, California 90745. Accounting Service Providers transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below Accounting Service Providers has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

-4-

15.     Corporate Defendant Amster Beene Partners, Inc. ("Amster Beene Partners"), also doing business as Entitlement Processing Services EPS, EPS-AALS, American Compliance, American Eligibility Services, and American Entitlement Assistance, is a California corporation formed in October 2020.  Its corporate filings list its principal place of business at 8583 Irvine Center Dr. #260, Irvine, California 92618.  Amster Beene Partners transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, Amster Beene Partners has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

16.     Corporate Defendant Assertive Loan Advisors, Inc. ("Assertive Loan Advisors"), also doing business as Universal Legal Advocacy, Allied Services, Assertive Services, A.L.A., and U.L.A., is a California corporation formed in February 2025.  Its corporate filings list its principal place of business at 13337 South Street #423, Cerritos, CA 90703.  Assertive Loan Advisors transacts or has transacted business in this District and throughout the United States.  At times relevant to this complaint, acting alone, in concert with others, or as part of the common enterprise described below, Assertive Loan Advisors has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

17.     Corporate Defendant Independent Accounting Consulting, Inc. ("Independent Accounting Consulting"), also doing business as Nationwide Advocacy Adjustment and N.A.A., is a California corporation formed in August 2023.  Its corporate filings list its principal place of business at 2 Enterprise, Suite #6206, Aliso Viejo, CA 92656.  Independent Accounting Consulting transacts or has transacted business in this District and throughout the United States.  At times

relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, Independent Accounting Consulting has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12. C.F.R. § 1015.2.

18.    Corporate Defendant United Administration Counseling, Inc. ("United Administration Counseling"), also doing business as United Advocacy Counseling, U.A.C., and United Intake, is a California corporation formed in February 2024. Its corporate filings list its principal place of business at 2520 Cherry Avenue, Suite #344, Signal Hill, California 90755.  United Administration Counseling transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, United Administration Counseling has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

19.    Corporate Defendant United Bookkeeping Services, Inc. ("United Bookkeeping Services"), also doing business as Allied Legal Assistance, Allied Loan Administration, A.L.A., N.A.A., P.P.D.S., U.A.C., and Allied Consumer Assistance, is a California corporation formed in July 2025.  Its corporate filings list its principal place of business at 4508 Atlantic Avenue, Suite #744, Long Beach, California 90807.  United Bookkeeping Services transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described below, United Bookkeeping Services has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

20.    Defendant Marinus Pieter Van Zweeden, also known as Marcel Van

Zweeden, Marinus Vanzweeden, Marcel Vanzweeden, Marinus Van Sweeden, Marshall Zeller, and Michael Zimmer ("Van Zweeden"), has served as an officer or director of several of Corporate Defendants at times relevant to this Complaint, including serving as ABC NV's President, Accounting Service Providers' Chief Executive Officer, and Amster Beene Partners' President. At times relevant to this Complaint, acting alone or in concert with others, and through interrelated entities described herein, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Van Zweeden incorporated Accounting Service Providers, registered fictitious business names for Accounting Service Providers and Amster Beene Partners, registered websites associated with Corporate Defendants, and served as an authorized signatory on bank and credit card accounts associated with ABC NV, Accounting Service Providers, and Amster Beene Partners. Van Zweeden resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

21. Defendant Martin Howard Rub, also known as Martin Ruben ("Rub"), has served as an officer or director of several of Corporate Defendants at times relevant to this Complaint, including serving as ABC CA's Chief Executive Officer and Independent Accounting Consulting's Chief Executive Officer. At times relevant to this Complaint, acting alone or in concert with others, and through interrelated entities described herein, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Rub incorporated ABC CA and Independent Accounting Consulting, registered fictitious business names for ABC CA and Independent Accounting Consulting, registered websites associated with Corporate Defendants, and served as an authorized signatory on bank and credit card accounts associated with ABC CA and Independent Accounting Consulting. Rub resides in this

-7-

District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

22.    Defendant Susan Jane Bustamante, also known as Sue Bustamante, Susan Bustamantes, and Susas Bustamante ("Bustamante"), has served as an officer or director of several of Corporate Defendants at times relevant to this Complaint, including serving as Assertive Loan Advisors' President, United Administration Counseling's Chief Executive Officer, and United Bookkeeping Services' Chief Executive Officer.  At times relevant to this Complaint, acting alone or in concert with others, and through interrelated entities herein, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Bustamante incorporated United Administration Counseling and United Bookkeeping Services, registered fictitious business names for Assertive Loan Advisors, United Administration Counseling, and United Bookkeeping Services, registered websites associated with Corporate Defendants, and served as an authorized signatory for bank and credit card accounts associated with United Administration Counseling and United Bookkeeping Services.  Bustamante resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

23.    At all times relevant to this Complaint, Individual Defendants—Van Zweeden, Rub, and Bustamante—have participated in and known about Corporate Defendants' unlawful and deceptive conduct or have been recklessly indifferent to it.  This is evident because they (i) incorporated Corporate Defendants, (ii) are executive officers of Corporate Defendants, (iii) registered fictious business names on behalf of the Corporate Defendants, (iv) registered websites affiliated with Corporate Defendants that make misrepresentations about Corporate Defendants and mortgage assistance relief under the CARES Act, (v) design and run an

-8-

operation distributing mailers misrepresenting eligibility in a governmental mortgage relief program under the CARES Act, (vi) assist the Corporate Defendants in collecting illegal upfront payments from consumers before performing any purported mortgage relief services, and (vii) control Corporate Defendants' bank and credit accounts.

24. Individual Defendants participate in the collection of upfront fees (e.g., checks mailed to UPS mailboxes or money transferred via Zelle) in at least two ways. First, they open—and pick up mail from—the Corporate Defendants' UPS mailboxes to which consumers mail checks. Second, Individual Defendants, as the sole signatories, control the bank accounts that receive consumers' Zelle payments.

25. Individual Defendant Van Zweeden also contacts consumers under aliases, including but not limited to Marshall Zeller, and makes misrepresentations, including falsely assuring consumers that Corporate Defendants "are in compliance with applicable laws."

## COMMON ENTERPRISE

26. Corporate Defendants ABC CA, ABC NV, Accounting Service Providers, Amster Beene Partners, Assertive Loan Advisors, Independent Accounting Consulting, United Administration Counseling, and United Bookkeeping Services (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful and deceptive acts and practices alleged below. Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, that have comingled funds, and that have shared one another's marketing materials. Because Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

-9-

27.  Corporate Defendants disguise their true identities by operating under registered fictitious business names ("FBNs").  Corporate Defendants often either share the same FBNs with each other or have an FBN that is the acronym of another Corporate Defendant or its FBN.  (See the table below.)

28.  Corporate Defendants also hide behind other aliases that do not appear to be registered.  (See the table below.)

| Corporate Defendant | Registered Fictitious Business Name(s) | Other Unregistered Aliases |
|---|---|---|
| **Accounting Business Consultants CA**<br><br>(Rub: CEO, CFO, President) | National Amendment Assistance | Nationwide Intake |
| | Nationwide Advocacy Adjustment | American Compliance |
| | United Advocacy Adjustment | |
| | N.A.A. | |
| | U.A.C. | |
| | National Accounting Assistance | |
| **Accounting Business Consultants NV**<br><br>(Van Zweeden: President) | Nationwide Advocacy Adjustment | National Advocacy Adjustment |
| | N.A.A. | |
| | U.A.C. | |
| **Accounting Service Providers**<br><br>(Van Zweeden: CEO, CFO, President) | A.L.A. | American Affordability Services |
| | Entitlement Processing Services | |

-10-

|  | N.A.A. |  |
|---|---|---|
|  | National Amendment Assistance |  |
|  | U.A.C. |  |
|  | Processing Service Providers |  |
|  | Accounting Administration Services |  |
| **Amster Beene Partners**<br><br>(Van Zweeden: CEO, CFO, President) | Entitlement Processing Services EPS | American Compliance |
|  | EPS – AALS | American Eligibility Services |
|  |  | American Entitlement Assistance |
| **Assertive Loan Advisors**<br><br>(Bustamante: President) | A.L.A. | Universal Legal Advocacy |
|  | Allied Services |  |
|  | Assertive Services |  |
|  | U.L.A. |  |
| **Independent Accounting Consulting**<br><br>(Rub: CEO, CFO) | N.A.A. |  |
|  | Nationwide Advocacy Adjustment |  |
| **United Administration Counseling**<br><br>(Bustamante: CEO, CFO) | U.A.C. | United Intake |
|  | United Advocacy Counseling |  |

-11-

| United Bookkeeping Services (Bustamante: CEO, CFO) | A.L.A. | Allied Consumer Assistance |
|---|---|---|
| | Allied Legal Assistance | |
| | Allied Loan Administration | |
| | N.A.A. | |
| | P.P.D.S. | |
| | U.A.C. | |

29.     Corporate Defendants also operate under various business names that are not registered as fictitious business names, including but not limited to Accounting Processing Services Inc., American Equitable Adjustment, United Asset Counseling, and United Help Center.

30.     Corporate Defendants use almost identical mailers, websites, documents, forms, emails, and other communications directed at consumers and have blurred corporate distinctions when interacting with consumers.

31.     At least two Corporate Defendants, Amster Beene Partners (Van Zweeden) and United Administration Counseling (Bustamante) operate out of a shared office space located at 23792 Rockfield Boulevard, Suite #160, Lake Forest, CA 92630.  On information and belief, all Corporate Defendants operate out of this shared office space.

32.     Corporate Defendants direct consumers to mail checks to UPS mailbox addresses that are registered and/or used by multiple Defendants.  For example, on February 13, 2024, Nationwide Advocacy Adjustment (an FBN of Rub's ABC CA and Independent Accounting Consulting) instructed one consumer to mail checks made out to "NAA" (an FBN used by Bustamante's United Bookkeeping Services, Van Zweeden's Accounting Service Providers, and Rub's Independent Accounting Consulting) to a UPS mailbox address.  The UPS mailbox

-12-

was used by United Bookkeeping Services (Bustamante), National Amendment Assistance (an FBN used by Rub's ABC CA and Van Zweeden's Accounting Service Providers), and National Advocacy Adjustment (an unregistered FBN used by Van Zweeden's ABC NV).

33.    Further, on June 24, 2024, United Advocacy Counseling (an FBN of Bustamante's United Administration Counseling) instructed a consumer to transfer upfront fees via Zelle to ABC NV's (Van Zweeden) bank account.

34.    Also, ABC CA (Rub) and Independent Accounting Consulting (Rub) both list the same address in their corporate filings.

35.    Corporate Defendants commingle funds.  For example, Corporate Defendants routinely transfer vast sums of money into accounts owned by Accounting Service Providers.  Accounting Service Providers (Van Zweeden) has received $183,749.50 from Assertive Loan Advisors (Bustamante), $725,901.00 from ABC CA (Rub), $152,594.49 from ABC NV (Van Zweeden), $98,813.80 from Independent Accounting Consulting (Rub), and $266,944 from United Bookkeeping Services (Bustamante).  Every transfer making up these totals was authorized by Van Zweeden, Rub, or Bustamante.

36.    Further, Defendants use Zelle to funnel money back and forth between themselves.  For instance, ABC NV (Van Zweeden), Independent Accounting Consulting (Rub), and United Bookkeeping Services (Bustamante) have sent payments via Zelle to Van Zweeden, personally.  And Van Zweeden has sent payments via Zelle to ABC CA (Rub) and Independent Accounting Consulting (Rub).

**PRIOR INVESTIGATIONS INTO VAN ZWEEDEN AND RUB FOR UNLAWFUL MORTGAGE RELIEF AND REAL ESTATE SCHEMES**

37.    Defendant Van Zweeden is a recidivist mortgage relief scammer.  He has been subject to multiple state law enforcement actions alleging he engaged in

-13-

similar unlawful conduct to that alleged here.

38.    On July 23, 2014, the State of Delaware filed a complaint against Consumer Relief Programs d/b/a Consumer Advocacy Assistance and its president, Van Zweeden, alleging that defendants engaged in an unlawful mortgage loan modification scheme.  *State of Delaware v. Consumer Relief Programs, Inc. d/b/a Consumer Advocacy Assistance and Marinus Pieter Van Sweeden*, Case No. N14C-07-191 EMD, Complaint (New Castle County, July 23, 2014).  The alleged scam resembles the one alleged here.  For example, Delaware alleged that Van Zweeden sent mailers to financially distressed homeowners, promising enormous rate reductions, misrepresenting they were "eligible" for a mortgage relief program, and falsely asserting their mortgage modification packages met "Government qualifying criteria."  The complaint alleged that Van Zweeden guaranteed that lenders would be forced to lower consumers' rates, and that defendants did not in fact have "the ability to instruct or compel any of the Delaware consumers' mortgage lenders to grant a loan modification."  Van Zweeden allegedly charged unlawful upfront fees, and, in return, prepared pro forma applications for rate reductions that (i) consumers' lenders could reject and (ii) the consumers could have obtained and completed on their own, without charge.

39.    On May 28, 2015, the parties reached a stipulated judgment.  *State of Delaware v. Consumer Relief Programs, Inc. d/b/a Consumer Advocacy Assistance and Marinus Pieter Van Sweeden*, Case No. N14C-07-191 EMD, Stipulation of Judgment (County of New Castle, May 28, 2015).  The judgment ordered Van Sweeden to pay restitution and a civil penalty, as well as to cease and desist from providing unlawful mortgage loan modification services to Delaware consumers.

40.    Van Zweeden faced similar state actions in Indiana and Maryland between 2013 and 2015, culminating in orders barring him from engaging in

-14-

deceptive conduct relating to mortgage and foreclosure relief, including collecting upfront fees before providing services. *See State of Indiana v. Home Relief Assistance and Marinus Van Zweeden*, Case No. 49D02-1407-PL-024428, Default Judgment (County of Marion, November 20, 2015) (enjoining defendants from providing unlawful foreclosure consultant services, including unlawfully collecting upfront fees, following default judgment on complaint alleging defendants engaged in an unlawful mortgage loan modification scheme); and *In the Matter of: Home Relief Assistance, Inc. and Marinus Van Zweeden a/k/a Marcel Van Zweeden*, Case No. CFR-FY2011-206, Final Order to Cease and Desist (Maryland Commissioner of Financial Regulation, January 15, 2013) (prohibiting respondents from engaging in "loan modification, loss mitigation, or similar services" with Maryland residents).

41.    Despite these prior enforcement actions, Van Zweeden continues to unlawfully advertise, market, provide, offer to provide, or arrange for others to provide mortgage assistance relief services, as defined in 12 C.F.R. Part 1015.2, including to residents of Indiana and Maryland in direct contravention of the Maryland Commissioner of Financial Regulation's final order.

42.    Rub was a California attorney (State Bar Number #62586) who resigned from the practice of law on October 20, 2002, with pending disciplinary charges involving real estate fraud and commingling his client trust account and his personal funds.

**COMMERCE**

43.    At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS ACTIVITIES**

44.    From at least 2022 to present, Defendants, individually and through

-15-

the operation of the common enterprise, have advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, including mortgage loan modification services.

45.    Defendants pitch their services to consumers using letters, websites, phone calls, and emails.  In their communications with consumers, Defendants make a variety of misrepresentations to induce consumers to pay Defendants. Defendants misrepresent that they will obtain a substantial reduction of the consumer's mortgage payment and interest rates, that the Defendants' mortgage assistance relief services are associated with a federal government homeowner assistance plan, and that the consumer need not or should not continue to make scheduled mortgage payments in accordance with the terms of the consumer's mortgage.  On average, Defendants charge consumers around $2,000 upfront for their services, requiring payment before the consumers' lenders agree to lower their mortgage rates—which seemingly never happens and which violates the MARS Rule.  Defendants also fail during their solicitations to make disclosures to consumers about their mortgage relief services as required by the MARS Rule.  As a result of their practices, consumers suffer substantial injury, including not only the amount they pay to Defendants but also interest, penalties, and fees that result from the consumers' failure to make timely mortgage payments at Defendants' direction.

**I.    Defendants Send Deceptive Mailers**

46.    Defendants generally initiate their scheme by mailing letters to consumers falsely claiming that the consumer's property may be entitled to a mortgage rate reduction under a governmental homeowner assistance plan, through the CARES Act.  (**Figure 1**, below, is a copy of one such letter, sent on or around July 29, 2024 by Corporate Defendant United Administration Counseling.)  Each Corporate Defendant uses substantially the same letter.

**Figure 1: Defendants' Mailer**



47.     The letter misleads consumers into thinking that Defendants' mortgage assistance relief services are associated with a governmental homeowner assistance plan.  The logo at the top-left of the letter reads, "CARES-Act Economic Stimulus Plan … [State] RESIDENT ELIGIBILITY NOTICE."  The letter

-17-

instructs the reader to contact the "Mortgage Adjustment Administration Office" and provides a telephone number.

48.     The letter also instructs the consumer to call a phone number or visit a website to confirm the consumer's eligibility for his/her rate reduction under the CARES Act and directs the consumer to a website address that is the consumer's last name followed by "Caresactreliefprogram.com" (e.g., Smith.Caresactreliefprogram.com).

49.     Although this letter is the Defendants' first contact with the consumer, it conspicuously warns the consumer at the top that it is the "FINAL  NOTICE."

50.     The letter contains detailed financial information, including the consumer's mortgage loan amount, current mortgage interest rate, and current mortgage monthly payment.

51.     The letter asserts that the consumer may be eligible for a rate reduction under the 2024 CARES-Act Homeowner Assistance Fund.  Defendants claim this relief is available "without the usual restrictions of credit history or FICO score, income or employment status[.]"

52.     The letter further asserts that the reduction being offered is part of a governmental homeowner assistance plan and based on a settlement between state attorneys general and mortgage lenders: "The principal loan balance reduction is based on the CARES Act Economic Stimulus Mortgage Program settlement between State Attorney Generals [sic] and lenders for home owners [sic] who received this notice."

53.     The letter quotes a "new fixed rate" and "new mortgage payment" that consumers could obtain under the CARES Act program if they are eligible.  These new rates and payments are considerably lower than consumers' current terms.

54.     The letter represents that the consumer is eligible if he/she has an "interest rate of 3% or higher," had a "drop in income due to the COVID-19

-18-

pandemic," or is experiencing "[f]inancial hardship or [m]edical issues."

55. The letter represents being eligible will result in a permanent mortgage adjustment: "These programs permanently adjust your existing home loan and reduce your monthly mortgage payments, receive interest rate reductions."

56. The letter fails to contain the following disclosures required by the MARS Rule:

- "[Name of Defendant] is not associated with the government, and our service is not approved by the government or your lender;" and
- "Even if you accept this offer and use our service, your lender may not agree to change your loan."

## II.    Defendants Deceive Customers Into Enrolling In Defendants' Program

57. After receiving Defendants' letter, consumers call the listed phone number or go to the listed website and request a call back.

58. Each of the Corporate Defendants, when communicating with consumers who contact Defendants after receiving the letter, makes representations that are substantially similar or identical to the representations made by other Corporate Defendants. These representations are made in phone calls with consumers, in emails with consumers, and in documents that Defendants provide to consumers. These emails and conversations repeat and bolster the representations that Defendants make in their initial letter, including that the consumer will receive substantial reductions in their mortgage payments and interest rate.

59. During the initial phone call, Defendants claim to offer services associated with a governmental homeowner assistance plan and assert they can secure the consumer a lower interest rate (e.g., 2% or 3%) if the consumer signs up for Defendants' services. The rate that Defendants promise is often the same rate that is quoted in the letter. For example, in or around August 2021, a consumer

-19-

called the telephone number on the mailer she received, and a person named Randy Goodman answered on behalf of American Eligibility Services—an unregistered alias for Van Zweeden, Amster Beene.  Goodman stated that American Eligibility Services "would enable [the consumer] to take advantage of a CARES Act program that would reduce [her] mortgage to 2% for the next five years and 3% thereafter."

60.    In emails and phone calls, Defendants claim that the consumer's lender is required to lower his/her rate under the CARES Act, the Homeowner Assistance Fund, or other governmental homeowner assistance plans.  Defendants often falsely claim that their services are associated with the Homeowner Assistance Fund and direct consumers to the Treasury Department's website on the Fund.

61.    For example, on April 1, 2024, a consumer called the telephone number on the mailer she received, and a person named Patti Jo Summers answered on behalf of Nationwide Advocacy Adjustment—an FBN for ABC CA (Rub), ABC NV (Van Zweeden), and Independent Accounting Consulting (Rub). Ms. Summers told the consumer that "Nationwide Advocacy Adjustment … would help [her] lower [her] mortgage rate through a government program related to the CARES Act.  [Ms. Sommers] said the CARES Act required banks to lower people's mortgage rates if they were struggling financially due, at least in part, to the pandemic."  The next day, Ms. Sommers directed the consumer to the Treasury Department's website on the Homeowner Assistance Fund, misleadingly walked her through it, insinuated that the website legitimized Nationwide's claims, and falsely claimed "that Nationwide's program was a federal program under the CARES Act."

62.    Defendants frequently attempt to imply a connection between their program and the Homeowner Assistance Fund.  In reality, the Homeowner

-20-

Assistance Fund is a pool of money that the federal government distributed to states to assist homeowners who were financially impacted by COVID-19 and struggling to pay their mortgages and other housing-related expenses.  The program is administered by state governments.  As such, one had to apply through a state agency to receive the funds, and the agency itself distributed the funds.  In contrast, Defendants misrepresent that the Fund somehow compels lenders to lower individual homeowners' mortgage interest rates.  This is not so.  Further, in many instances, by the time Defendants send their mailers to consumers, the consumer's state has expended its allotted funds and stopped accepting applications.

63.    Additionally, during the initial phone call, Defendants request documents containing the consumer's financial information (e.g., mortgage statement, utility bill, and paystub), supposedly to confirm the consumer is eligible under the CARES Act for mortgage relief.

64.    Shortly after the consumer sends the financial documents, Defendants email the consumer that he/she is eligible and has been accepted into Defendants' program.  (**Figure 2** below is a copy of one such confirmation email, sent on August 5, 2024 by Corporate Defendant United Administration Counseling.)  Each Corporate Defendant sends a substantially identical confirmation email.

*** Continued On Next Page ***

-21-

**Figure 2: Defendants' Confirmation Email**

Docusign Envelope ID: F90C3178-CA5A-4384-A319-D2C015B72C56

Dear ████████████

Congratulations! As we just discussed, your file has been accepted by the Compliance Department for the CARES Act – Homeowner Assistance Fund financial relief program. Your acceptance code is ██████████ for the restructuring of your mortgage at 2.0% for the first 5 years of the loan and 3.0% for the total duration of the loan.

Your current net monthly mortgage payment is $835.29 (principal, interest) including escrow $282.25 totalling $1,117.54

- Non-interest bearing principal balance deferment of $37,000 to make the mortgage more sustainable

The new *adjusted* net monthly mortgage payment (principal and interest) fixed at 2.0% will be $455.02. Your savings will be $380.27 per month, $4,563.24 per year and $22,816.20 over the first 5 years. Your total payment will be including escrow of $282.25 totalling $737.27

Year 6 and for the duration of the mortgage, your monthly payment (Principal and Interest) fixed at 3.0% will be $490.43 including escrow $282.25 totalling $772.68

- 2 month grace period for August and September
- The new modified payment will start October 2024
- Fresh start with a fixed low rate & payment
- Package completed in 3-4 weeks
- No pre-payment penalty

In a separate email, you will receive the Authorization agreement via Doc-U-Sign, which simplifies the process, so you don't have to print and fax the agreement back to us, you can do an electronic submission. Remember we need you to return the Authorization agreement today, so that we can keep your file open. The Processing Department will contact you in approximately 24 hours after they receive your Authorization. To ensure transparency and continuous quality we offer:
- Access to your case online 24/7 via the portal; www.united-clientportal.info
- Direct communication with the Processing Department
- You will receive your Professional Loan Restructuring Package especially prepared for your financial situation which is in alignment with the Government guidelines and specific lender underwriting criteria
- We guarantee the quality of our service.

Your processor is also available by phone / email to answer any questions and for ongoing support. We want to thank you for the opportunity to assist you on this important matter.

65.     In the confirmation email, Defendants bolster the previous governmental homeowner assistance plan claims made in the initial letter and on phone calls by stating that "your file has been accepted by the Compliance Department for the CARES Act - Homeowner Assistance Fund financial relief program." Further, Defendants falsely represent that the consumer is guaranteed a lower rate and monthly payment through the CARES Act and will obtain this lower rate within a short period of time (e.g., three months).

66.     The purported savings described in this email are certain rather than conditional. Defendants' email tells the consumer not what they hope to be able to

-22-

get for the consumer, but instead what the consumer's new monthly mortgage payment actually will be—"The new *adjusted* net monthly mortgage payment (principal and interest) fixed at 2.0% will be $455.02"—and when the modified payment will start—"The new modified payment will start October 2024."

67. Further, Defendants falsely claim in their confirmation emails and in phone calls with consumers that the consumer can stop making mortgage payments for a one-to-three month "grace period." The email in Figure 2, for example, states that the consumer has a "2 month grace period." However, as required by the MARS Rule, Defendants do not disclose, "If you stop paying your mortgage, you could lose your home and damage your credit rating."

68. After sending the confirmation email, Defendants send the consumer a separate email advising the consumer that he/she will receive an email from DocuSign with an agreement for the consumer to sign. Defendants commonly refer to this agreement as an "Engagement Agreement," "Rate Lock Agreement," or "Authorization Agreement." In Defendants' email, Defendants also congratulate the consumer on being accepted into "the CARES Act Homeowner Assistance Fund mortgage adjustment program."

69. In their emails, Defendants instill a false sense of urgency to coax the consumer to sign the agreement as soon as possible, claiming that the consumer must sign the agreement "today" (i.e., the day of the confirmation email) in order for Defendants to keep the consumer's "file open" and thereby lock in the promised lowered rates and payments.

**III.    Defendants Fail to Make Required Disclosures**

70. Each of Defendants' communications preceding the engagement agreement's execution do not contain the following disclosures in a clear and prominent manner, preceded by "IMPORTANT NOTICE," and in bold, large font, as required by the MARS Rule:

-23-

- "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for our services.
- "[Name of Defendant] is not associated with the government, and our service is not approved by the government or your lender;" and
- "Even if you accept this offer and use our service, your lender may not agree to change your loan."

71.    As noted above, when Defendants advise consumers that they have a grace period and should stop making mortgage payments, Defendants do not provide the MARS Rule required disclosure: "If you stop paying your mortgage, you could lose your home and damage your credit rating."

**IV.    Defendants Charge Unlawful Upfront Fees**

72.    Defendants always require consumers to pay Defendants prior to consumers obtaining any mortgage relief, in violation of the MARS Rule.

73.    The average amount a consumer pays is roughly $2,000.  The fees are typically divided into two payments and often range from $800 to $1,500 per payment.  Defendants often refer to the first fee as a "commitment fee," which Defendants typically request shortly after sending the confirmation email and having the consumer sign the engagement agreement.  Defendants charge the second fee before they provide consumers with the Loan Restructuring Package, as described in greater detail in Section V.  Each of these fees is a violation of the MARS Rule.

74.    With each request for payment, Defendants generally provide consumers with payment instructions and an invoice.  The payment instructions advises consumers that they may pay via Zelle, by texting or emailing a picture of

a check, or by mailing a check to Defendants' "address," which is, in fact, a UPS mailbox registered to one of the Defendants.  Defendants all use virtually the same payment instructions document and invoice.  The checks consumers send contain the consumers' account and routing numbers.

## V.    Defendants Prepare Pro Forma Loan Restructuring Packages

75.    In exchange for the upfront fees, Defendants prepare a Loan Restructuring Package for consumers to send to their lenders.  Defendants misrepresent that once a lender receives the package, the lender is required by law to lower the consumer's mortgage rate and payment.

76.    In order to prepare the package, Defendants instruct consumers to send them sensitive financial information and documents, including pay stubs, tax returns, bank statements, and a sheet listing their monthly expenses.

77.    Moreover, Defendants require consumers to draft a hardship letter, describing their difficult financial straits and their need for a rate reduction.  These letters are often heartfelt accounts of how people lost money and/or income during the pandemic and can no longer afford their mortgage.  In one instance, a consumer wrote that she lost her business during the pandemic, had to go on disability, now works at a gas station, and is barely hanging on financially.

78.    Even after seeing these distressing stories of consumers in dire financial circumstances, Defendants nonetheless demand a second unlawful upfront payment.

## VI.    Defendants Fail to Obtain Promised Mortgage Relief

79.    After they receive the second payment, Defendants send consumers the Loan Restructuring Package with instructions for the consumer to send it to the consumer's lender.

80.    Consumers send the Loan Restructuring Packages to their lenders, and their lenders regularly deny the requests to lower their rates and monthly payments.

-25-

In at least one instance, a lender actually raised a consumer's rate instead of lowering it because the consumer had followed Defendants' instructions to not pay his mortgage and now owed his lender more than he could afford to pay in one lump sum.

81.    The Loan Restructuring Packages do not have the force of law, contrary to Defendants' assertions.  These packages contain standard forms *requesting* mortgage assistance, along with the consumer's documents showing their financial hardship—all of which they could have prepared themselves for free, using forms typically provided by their lenders or available online.  Moreover, the packages often contain numerous typos and incomplete forms.

82.    Occasionally, lenders explain to the consumers that the CARES Act does not require lenders to lower rates or that the consumer's state is no longer administering the Homeowner Assistance Fund.  Sometimes, lenders tell consumers that they suspect Defendants are running a scam.

83.    Surprised by the lenders' denials, consumers contact Defendants.  In many instances, Defendants deflect any insinuation of wrongdoing, tell consumers that their lenders are not complying with all the guidelines and regulations, and instruct consumers to send the lenders additional paperwork.

84.    When consumers seek further assistance or a refund, Defendants either cease communication or notify the consumer that their case will be closed, no additional services will be rendered, and no refund will be issued.

85.    Eventually, Defendants stop responding to the consumer.

**VII.   Defendants' Unlawful Conduct Causes Substantial Injury**

86.    Over time, many consumers come to understand that they have been deceived by Defendants' promises of mortgage relief.

87.    Contrary to Defendants' representations:

- Defendants do not obtain the specific reduced interest rates and mortgage

payments they quoted, let alone in the promised time frame.

- Defendants' services are not associated with, approved by, or affiliated with any governmental program, including the CARES Act or Homeowner Assistance Fund.

- Consumers do not have a "grace period" during which they could stop paying their mortgage.

88.    Consumers suffer substantial injury and are left in serious jeopardy. In many instances, consumers who hire Defendants lose hundreds or thousands of dollars in fees they paid to Defendants, fall months behind on their mortgage payments and accrue significant late fees and interest, and find that their credit ratings have been negatively impacted as a result.  Additionally, multiple consumers have faced risk of foreclosure, and at least one consumer ended up with a higher mortgage rate.

89.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the FTC.

90.    Further, based on the facts and violations of law alleged in this Complaint, Individual Defendants knew or should have known about the conduct alleged above.

## VIOLATIONS OF THE FTC ACT

91.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

92.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I

### Deceptive Representations in Violation of the FTC Act

93.    In numerous instances, in connection with the advertising, marketing,

providing, offering to provide, or arranging of mortgage assistance relief services, Defendants represent, directly or indirectly, expressly or by implication that:

      (a)    Defendants will obtain mortgage loan modifications for consumers that will make consumers' payments substantially more affordable or will substantially lower their interest rates;

      (b)    Defendants' mortgage assistance relief services are associated with a federal government homeowner assistance plan; or

      (c)    the consumer who purchased Defendants' services is not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

94.    In truth and in fact:

      (a)    In numerous instances, Defendants do not obtain mortgage loan modifications for consumers that make consumers' payments substantially more affordable or substantially lower their interest rates;

      (b)    Defendants' mortgage assistance relief services are not associated with a federal government homeowner assistance plan; and

      (c)    the consumer who purchased Defendants' services continues to be obligated to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

95.    Therefore, Defendants' representations as described in Paragraph 93 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE MARS RULE (REGULATION O)**

96.    In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans.  Omnibus Act, § 626, 123 Stat. 678, as clarified by Credit Card Act, § 511, 123 Stat. 1763-64.  Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one of the provisions of which became effective on December 29, 2010.  Title X of the Dodd-Frank Act, 124 Stat. 1376, transferred the FTC's rulemaking authority under the Omnibus Act, as amended, to the Consumer Financial Protection Bureau ("CFPB").  On December 16, 2011, the CFPB republished the MARS Rule as Regulation O, 12 C.F.R. Part 1015.

97.    The MARS Rule (Regulation O) defines "mortgage assistance relief services" as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following: (1) Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession; (2) Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees; (3) Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan; (4) Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may: (i) Cure his or her default on a dwelling loan, (ii) Reinstate his or her dwelling loan, (iii) Redeem a dwelling, or (iv) Exercise any right to reinstate a dwelling loan or redeem a dwelling; (5) Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or (6) Negotiating, obtaining or arranging: (i) A short sale of a dwelling,

-29-

(ii) A deed-in-lieu of foreclosure, or (iii) Any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder."  12 C.F.R. § 1015.2.  The MARS Rule (Regulation O), in turn, defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  *Id.*

98.    The MARS Rule (Regulation O) defines "dwelling loan" as "any loan secured by a dwelling, and any associated deed of trust or mortgage."  *Id.*  The MARS Rule (Regulation O) also defines "dwelling loan holder" as "any individual or entity who holds the dwelling loan that is the subject of the offer to provide mortgage assistance relief services."  *Id.*

99.    The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the provider obtained from the consumer's dwelling loan holder or servicer.  12 C.F.R. § 1015.5(a).

100.   The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:

(a)    the likelihood of negotiating, obtaining, or arranging any represented service or result.  12 C.F.R. § 1015.3(b)(1);

(b)    the amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result.  12 C.F.R. § 1015.3(b)(2);

-30-

(c)    that a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with (i) the United States government, (ii) any governmental homeowner assistance plan, (iii) any Federal, State, or local government agency, unit, or department, (iv) any nonprofit housing counselor agency or program, (v) the maker, holder, or servicer of the consumer's dwelling loan, or (vi) any other individual, entity, or program.  12 C.F.R. § 1015.3(b)(3)(i)-(vi); and

(d)    the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.  12 C.F.R. § 1015.3(b)(4).

101.   The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  12 C.F.R. § 1015.4(a)(1)-(3).

102.   The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, and (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and  (iv) in certain cases, a statement disclosing that if they stop paying

their mortgage, consumers may lose their home or damage their credit.  12 C.F.R. § 1015.4(b)(1)-(4) and (c).

103.   Pursuant to the Omnibus Act, § 626, 123 Stat. 678, as clarified by the Credit Card Act, § 511, 123 Stat. 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule (Regulation O) constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

104.   Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the MARS Rule, including, but not limited, to the recission or reformation of contracts, and the refund of money or return of property.

### Count II

**Advance Payments for Mortgage Assistance Relief Services**

**in Violation of the MARS Rule (Regulation O)**

105.   In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants ask for or receive payment before consumers have executed a written agreement between the consumer and the dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the Defendants obtained from the consumer's dwelling loan holder or servicer, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.5(a).

-32-

**Count III**

**Material Misrepresentations in Violation of the**

**MARS Rule (Regulation O)**

106.   In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(b)(1)-(4), misrepresent, expressly or by implication, material aspects of their services, including, but not limited to:

(a)   Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable;

(b)   The amount of time it will take Defendants to accomplish any represented service or result;

(c)   That Defendants' mortgage assistance relief services are affiliated with, endorsed or approved by, or otherwise associated with any governmental homeowner assistance plan; or

(d)   The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

**Count IV**

**Failure to Disclose in Violation of the**

**MARS Rule (Regulation O)**

107.   In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule, fail to clearly and prominently make the following disclosures:

-33-

(a)    in all general commercial communications –

    (1)    "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(1); and

    (2)    "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(2);

(b)    in all consumer-specific commercial communications –

    (1)    "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(1);

    (2)    "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(2);

    (3)    "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(3); and

-34-

(c)    in all communications where Defendants represented, expressly or by implication, in connection with the advertising, marketing, providing, offering to provide, or arranging of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan –

(1)    "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(c).

## VIOLATIONS OF THE GRAMM-LEACH-BLILEY ACT

108. Section 521 of the GLB Act, 15 U.S.C. § 6821, became effective on November 12, 1999, and remains in full force and effect. Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

109. The GLB Act defines "customer" to mean "with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary." 15 U.S.C. § 6827(1). The GLB Act defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of a financial institution and is identified with the customer." 15 U.S.C. § 6827(2). The GLB Act defines "financial institution" to include "any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution." 15 U.S.C. § 6827(4)(A).

110.   Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance with such Act."  Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), a violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the FTC Act.  Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the power to enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule.  Section 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any person, partnership, or corporation" who "violates any rule . . . respecting unfair or deceptive acts or practices."  Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), provides that in any action commenced under Section 19(a)(1), the court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . ." with such relief including but not limited to "recission or reformation of contracts [and] the refund of money or return of property . . . ."

**Count V**

**Use of False Statements to Obtain Customer Information**

111.   In numerous instances in connection with the advertising, marketing, providing, offering to provide, or arranging of mortgage assistance relief services, Defendants have made false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain customer information of a financial institution, such as mortgage statements, bank statements, bank account numbers, and routing numbers, including by misrepresenting, directly or indirectly, expressly or by implication, that:

-36-

(a)    Defendants will obtain mortgage loan modifications for consumers that will reduce consumers' payments or will substantially lower their interest rates;

(b)    the consumer who purchased Defendants' services is not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

112.    Therefore, Defendants' acts or practices as described in Paragraph 111 violate Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a)

## CONSUMER INJURY

113.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the MARS Rule (Regulation O), and the GLB Act.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, the FTC request that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act, the MARS Rule (Regulation O), and the GLB Act;

B.    Grant preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including temporary and preliminary injunctions, an order freezing assets, immediate access to Defendants' business premises, and appointment of a receiver;

C.    Award monetary and other relief within the Court's power to grant, including restitution or the refund of money; and,

D.    Award any additional relief as the Court determines to be just and proper.

-37-

Respectfully submitted,

Dated: 5/22/2026

DAVID HANKIN
dhankin@ftc.gov
JEFFREY TANG
jtang@ftc.gov
MILES D. FREEMAN
mfreeman@ftc.gov
JOHN JACOBS
jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*